**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DARLENE SINGLETON,

    Plaintiff,

vs.                                                            CASE NO. 3:06-cv-835-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1, Complaint) seeking review of the final decision of the Commissioner of the Social Security Administration (the Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI) payments. 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #16, Plaintiff's brief). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #17, Defendant's brief).[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge. The case was originally referred to Magistrate Judge James R. Klindt, however Judge Klindt filed an Order of Recusal (Doc. #20) on November 6, 2007. The case was reassigned to the undersigned on November 7, 2007. The Commissioner has filed the transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

Upon review of the record, the Court found the issues raised by Plaintiff were fully

---

[1]Hereafter, the Court will identify Plaintiff's brief as "P's brief" and Defendant's brief as "D's brief."

briefed and concluded oral argument would not benefit the Court in making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the Commissioner's decision is **REVERSED AND REMANDED**.

## PROCEDURAL HISTORY

In the instant action, Plaintiff filed an application for DIB (Tr. 167-69) and SSI disability payments (Tr. 499-504) on June 26, 2002. Plaintiff initially alleged an inability to work due to left shoulder, back, and neck injuries (Tr. 177). Before the administrative hearings, Plaintiff asserted the additional medical conditions of chest pain, headaches, and depression (Tr. 186, 209).

After being denied initially and upon reconsideration (Tr. 37-42, 44-45, 505-13), Plaintiff requested a hearing, which was held on July 12, 2004 in Jacksonville, Florida before Administrative Law Judge (ALJ) John M. Meisburg, Jr. (Transcript of Hearing at Tr. 516-19). Plaintiff failed to appear at the hearing (Tr. 518). Thereafter, Plaintiff requested a second hearing which was held on October 20, 2004 before ALJ Meisburg (Transcript of Hearing at Tr. 520-31). Plaintiff was represented by Ms. Marcella A. Taylor, Esquire and testified on her own behalf (Tr. 520-31).

After the hearing, the ALJ determined it was necessary to obtain additional evidence in order to fully develop the record (Tr. 103), therefore the ALJ sent interrogatories to treating physicians (Tr. 104-06, 122-26), a medical expert (Tr. 132-33) and also requested a consultive examination (Tr. 107-09). A third hearing was held on January 4, 2006, however only the medical expert (ME), Dr. Arthur Lorber, and the vocational expert (VE), Mr. Jack Turner, testified at the hearing (Transcript of Hearing at Tr. 532-41). Plaintiff and

her counsel were present (Tr. 532-41).

On May 30, 2006, the ALJ issued a hearing decision denying Plaintiff's claim (Tr. 15-34).  The Appeals Council (AC) denied Plaintiff's request for review (Tr. 6-8), making the hearing decision the final decision of the Commissioner.  Plaintiff's current counsel of record, Mr. Erik W. Berger, Esquire, filed the instant action in federal court on September 20, 2006 (Doc. #1).

**STATEMENT OF FACTS**

Plaintiff's medical history is set forth in detail in the ALJ's decision, P's brief, and D's brief.  By way of summary, Plaintiff received treatment for depression in August and September of 2002 at Shands Jacksonville (Tr. 339-42).  Her primary care physician, Nicanor Arca, M.D., at Shands Jacksonville Family Practice Center, prescribed Paxil for Plaintiff's depression (Tr. 339), which the doctor indicated had persisted for the past four to five years (Tr. 340).  Plaintiff's pain management doctor, Russell Sachs, M.D., also noted Plaintiff's depressed affect (Tr. 430, 432) and indicated "that some significant amount of her current situation [wa]s due to depression" (Tr. 430).  Plaintiff's medical records were reviewed by non-examining state agency doctors on October 24, 2002 (Tr. 297-310) and January 14, 2003 (Tr. 319-32); however, both physicians found Plaintiff's affective disorder was "not severe" (Tr. 297, 319).

On March 18, 2004, Plaintiff's primary care physician referred her to the Shands Jacksonville Emergency Room during an episode of disorientation, confusion, and depression (Tr. 400). The hospital staff reported Plaintiff was intermittently cooperative and sometimes completely unresponsive (Tr. 400).  Plaintiff underwent a twenty-three hour observation in the Shands Jacksonville Emergency Room and on March 19, 2004 she was

evaluated by a medical consultant[2] for her psychological condition (Tr. 400-01). The consultant noted that Plaintiff did not know what she would do when she became dizzy and confused and that her responses to questions regarding psychotic symptoms were unclear (Tr. 401). Plaintiff reported to the consultant that she felt depressed because of family problems and chronic pain, and she indicated both short and long-term memory loss as well as "vague suicidal ideation" (Tr. 400). The consultant recommended Plaintiff be admitted to a psychiatric unit and placed under the Baker Act[3] (Tr. 400).[4] Plaintiff remained at Shands Jacksonville hospital until March 22, 2004 (Tr. 398). Plaintiff was diagnosed with depressive disorder, not elsewhere classified (Tr. 399).

On February 1, 2005, Hugh E. Switzer, M.D., at the request of the ALJ, performed a physical consultive examination on Plaintiff (Tr. 475-85). During the exam, Dr. Switzer noted Plaintiff presented with a strange affect and had difficultly communicating (Tr. 476). Dr. Switzer further indicated Plaintiff paused for periods of time after asking questions,

---

[2]The consultant's name is illegible on the Shands Jacksonville records (Tr. 400-01).

[3]Under chapter 394, Florida Statutes (2007), entitled "The Florida Mental Health Act" or "The Baker Act," a person may be voluntarily or involuntarily treated at a facility for their mental health. A person may be involuntarily admitted if they have refused voluntary examination or are unable to determine whether examination is necessary; and without care or treatment, the person is likely to suffer from neglect or refuse to care for himself or herself which may cause substantial harm to his or her well-being or there is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others in the near future. Fla. Stat. § 394.463(1)(a)-(b) (2007).

[4]Although the consultant recommended Plaintiff be admitted to a psychiatric unit and placed under the Baker Act, the rest of the medical record is illegible (Tr. 401). The medical records from Shands Jacksonville do not appear to be complete, yet it appears Plaintiff was admitted under the Baker Act and remained at the hospital until March 22, 2004 (Tr. 398-99). It is unclear whether she was voluntarily or involuntarily admitted for this psychiatric treatment. However, the ALJ did find Plaintiff was "Baker Acted into the hospital" (Tr. 21).

which was similar to a "catatonic type state," except that it only lasted for brief periods of time (Tr. 476). Dr. Switzer's impression included depression and psychiatric disorder of an unknown type with one of the manifestations being numerous psychosomatic symptoms without objective findings (Tr. 478). On June 21, 2005, John H. Griscom, M.D., a ME, reviewed Plaintiff's medical records (from March 4, 2002 to May 11, 2004) and found Plaintiff suffered from depression and myofascial syndrome with chronic intractable pain, but in his medical opinion she did not quite meet the criteria of Listing 12.07 for Somatoform Disorders (Tr. 490, 494).[5] However, he also indicated that a "psychiatric evaluation could be obtained" (Tr. 490). He further noted that it was not likely Plaintiff would get well because psychological issues seemed to perpetuate her pain pattern and some occult secondary gain may inhibit resolution (Tr. 495).

Plaintiff's treating physician, Dr. Arca, completed a Medical Verification form on June 27, 2005 in which she noted that Plaintiff, because of her depression, "may have decreased concentration" and a "lack of concentration" may impact her ability to participate in work or classroom activities (Tr. 496). Dr. Arca determined Plaintiff's condition was permanent and limited Plaintiff to less than ten hours of activity and less than ten hours of work per week[6] (Tr. 496).

---

[5]Dr. Griscom's review of Plaintiff's records also found the following medical conditions: lumbar and cervical radiculitis, mild, bilateral carpal tunnel, and status post auto accident (Tr. 490).

[6]The Medical Verification form is separated into several sections (Tr. 496). In the employment section, Dr. Arca indicated Plaintiff could work one to ten hours per week at a sit down job (Tr. 496). In the activities section, Dr. Arca determined Plaintiff could participate in activities, such as attending classes or volunteering, for one to ten hours per week (Tr. 496).

5

At the time of the October 2004 administrative hearing, Plaintiff was forty-one years old (Tr. 522). She has a ninth grade education and previously worked as a cook helper (Tr. 522-23). Plaintiff testified she was diagnosed with depression ten years ago and currently is prescribed Zoloft to alleviate the symptoms[7] (Tr. 526). Plaintiff also testified to limited daily activities (Tr. 527). In her testimony, Plaintiff stated she does not have friends, does not help with housework or laundry, no longer drives, and only cooks simple meals (Tr. 527). Additionally, Plaintiff alleged she has problems with focus, concentration, and memory loss (Tr. 527). Due to her depression, Plaintiff stated she was treating with a psychiatrist, Dr. Heron, once a month (Tr. 526).

The VE testified at the January 2006 hearing upon the assumption of an individual with Plaintiff's age, education, and work experience, who had limitations of: sitting for six hours per day, standing/walking for two hours per day, lifting ten pounds often and twenty pounds occasionally, avoiding frequent squatting, kneeling, and climbing, and minimizing the use of legs to push and pull[8] (Tr. 538, *see* 491). Upon this assumption, the VE determined that such a person could not perform Plaintiff's past relevant work but could perform jobs such as cashier II, para-mutual ticket cashier, and fingerprint clerk I (Tr. 539-40).

---

[7]Plaintiff testified that she was originally prescribed Paxil for her depression, but her doctors switched her prescription to Zoloft (Tr. 526).

[8]The ALJ did not proffer the limitations to the VE, but instead asked the VE to consider a hypothetical person with the limitations listed in Dr. Griscom's report (Tr. 538, *see* 491). Although the report also contained diagnoses (*see* Tr. 491), the ALJ did not instruct the VE to consider the Plaintiff's medical conditions in his hypothetical (Tr. 538).

## SOCIAL SECURITY ACT ELIGIBILITY
## AND THE STANDARD OF REVIEW

Plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less that twelve months.  20 C.F.R. §§ 404.1505, 416.905.[9]  For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).  The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920.  Plaintiff bears the burden of persuasion through Step Four, while at Step Five, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of facts are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla - i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

---

[9]Unless otherwise specified, all references to 20 C.F.R. will be to the 2007 edition.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court has not re-weighed the evidence, but has determined whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the Plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

## ANALYSIS OF SPECIFIC ISSUES

Plaintiff raises one issue on appeal.  Plaintiff alleges the ALJ erred when he determined Plaintiff's mental impairments were severe but did not interfere with her ability to work (P's brief at 7).  Plaintiff further argues the ALJ's decision relating to Plaintiff's mental impairments is confusing and inherently inconsistent (P's brief at 7-11).

Defendant asserts the ALJ limited Plaintiff to unskilled work, which reflects consideration of the impact her mental impairment had on her ability to meet the mental

demands of work (D's brief at 6).[10]  The Defendant further asserts the ALJ found a significant limitation stemming from Plaintiff's mental impairment, however the ALJ correctly concluded the limitation did not prevent Plaintiff from performing the jobs identified by the VE (D's brief at 7).

In this case, the Court agrees with the Plaintiff.

The residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his or her impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The impairments include physical and mental limitations that affect what a claimant can do in a  work setting.  20 §§ C.F.R. 404.1545(a); 416.945(a).[11]  The focus of this assessment is on the doctors' evaluations of the claimant's condition and the medical consequences thereof.  *Lewis*, 125 F.3d at 1440.  If a claimant can still do the kind of work she has done

---

[10]The Court notes the ALJ did not include any mental limitations in his stated RFC (Tr. 23, Finding No. 5).  The ALJ sought the input of a VE "[t]o determine the extent to which these [RFC] limitations erode the *unskilled* light occupational base . . . ." (Tr. 27) (emphasis added).  The Court takes note Plaintiff's past relevant work was also unskilled (*see* Tr. 26, Finding No. 9).

[11]The ALJ assesses physical abilities by determining the nature and extent of the plaintiff's physical limitations and then assessing the plaintiff's residual functional capacity for work activity on a regular and continuing basis.  20 §§ C.F.R. 404.1545(b); 416.945(b).  "A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce [the plaintiff's] ability to do past work and other work."  *Id.*  The ALJ assesses the plaintiff's mental abilities by determining the nature and extent of the plaintiff's mental limitations and restrictions and then assessing the plaintiff's residual functional capacity for work activity on a regular and continuing basis.  20 §§ C.F.R. 404.1545(c); 416.945(c).  "A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [the plaintiff's] ability to do past work and other work."  *Id.*

in the past, then the Regulations require that she be found not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  In evaluating a claimant's residual functional capacity, the ALJ is obliged to consider all of the claimant's impairments.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

In this case, the ALJ determined at Step One of the sequential evaluation process that the Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision (Tr. 18).  At Step Two, the ALJ found Plaintiff had the following severe combination of impairments:[12]  myofascial syndrome, cervical and lumbar radiculitis, carpal tunnel syndrome, and depression (Tr. 18).  Then at Step Three the ALJ indicated Plaintiff did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1" (Tr. 22).  The ALJ next found Plaintiff retained the RFC to perform light work[13] with a sit/stand option and the additional limitations that: she "should avoid frequent squatting, kneeling, and climbing and she may minimally use her legs to push and pull" (Tr. 23).[14]  At Step Four the ALJ

---

[12]In this circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  The ALJ must consider how a plaintiff's limitations restrict the Plaintiff's ability to work when assessing the severity of an impairment.  *See* 20 C.F.R. §§ 404.1521(a); 416.921(a).

[13]Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  20 C.F.R. §§ 404.1567(b); 20 C.F.R. 416.967(b).  A job is in the light work category may still require a good deal of walking or standing, or it may involve sitting most of the time with some pushing and pulling of arm or leg controls.  *Id.*  To be considered capable of performing a full or wide range of light work, the plaintiff must have the ability to do substantially all of the aforementioned activities.  *Id.*

[14]The ALJ in this case used the preferred method of demonstrating job availability
(continued...)

determined Plaintiff was unable to perform any past relevant work (Tr. 26) and at Step Five the ALJ found there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform (Tr. 26).

In determining Plaintiff's RFC the ALJ did not assess any mental limitations. Plaintiff's depression was specifically found to be a severe impairment at Step Two (Tr. 18). An impairment or combination of impairments is severe if it significantly limits a plaintiff's physical or mental ability to do basic work activities.[15]  20 C.F.R. §§ 404.1521(a), 416.921(a).

The ALJ evaluated Plaintiff's mental impairments[16] and found mild restrictions of activities of daily living, mild restrictions maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation of

---

[14](...continued)
when the grids are not controlling, that is, vocational expert testimony. *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985). As discussed *infra*, the ALJ failed to include all of Plaintiff's impairments and limitations in the hypothetical posed to the vocational expert.

[15]Basic work activities means the abilities an aptitudes necessary to do most jobs. 20 C.F.R. §§ 404.1521; 416.921. Examples are understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in routine work setting. *Id.*

[16]When evaluating a claim of disability based on a mental impairment, the ALJ is required to follow the special technique dictated by the Psychiatric Review Technique Form (PRTF) for evaluating mental impairments. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); 20 C.F.R. §§ 404.1520a(b)-(c); 416.920a(b)-(c). This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3). The ALJ is required to incorporate the results of this technique into the findings and conclusions of the opinion. 20 C.F.R. § 404.1520a(e)(2); 416.920a(e)(2).

extended duration (Tr. 23). Although the ALJ assessed Plaintiff to have moderate difficulties in maintaining concentration, persistence or pace (Tr. 23), the ALJ did not describe how this limitation would affect Plaintiff's mental RFC. The ALJ must examine all limitations on work related activities resulting from the mental impairment and these must be described in the RFC assessment. *See* Social Security Ruling 85-16 (SSR 85-10).

The Court is it unclear how the ALJ determined that Plaintiff's depression was a severe impairment that did not significantly impact her ability to work. By definition a severe impairment does effect one's ability to perform basic work activities. *See* 20 C.F.R. 404.1521(a), 416.921(a). Where the Court cannot discern the basis for the ALJ's decision, a sentence-four remand may be appropriate to allow the ALJ to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829-30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).

As Plaintiff's RFC was not properly assessed, the hypothetical question posited to the VE was also incomplete because it failed to encompass all of Plaintiff's severe impairments. *See Pendley v. Heckler*, 767 F.2d 1561, 1562-63 (11th Cir. 1985). As previously discussed *supra*, the ALJ did not reference how Plaintiff's mental impairments affected her ability to work, and thus her RFC.

When VE testimony is relied upon, such testimony should be developed under the expected standards. A vocational expert's testimony does not constitute substantial evidence unless the ALJ poses a hypothetical question which comprises all of the claimant's impairments. *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002), *citing Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999), *cert. denied*, 529 U.S. 1089

12

(2000). The ALJ's hypothetical question to the VE did not accurately portray Plaintiff's mental limitations. Thus, any reliance on the VE's testimony to determine if Plaintiff could perform her past relevant work and if there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform is not supported by substantial evidence.

## OTHER ISSUES

In reviewing the ALJ's decision in this case, the Court has noted additional areas of concern, which the Commissioner should address during the supplementary proceedings on remand.

First, the ALJ did not state with particularity the weight accorded to the opinion of Dr. Arca, and failure to do so constitutes reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). In addition, the ALJ selectively relied on certain aspects of Dr. Arca's medical opinion, while disregarding other aspects of the same physician's opinion, which is improper (*Compare* Tr. 22, 23, 25, *with* Tr. 496). *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).

The case law and the regulations require the ALJ to give substantial weight to the opinion, diagnosis and medical evidence of a treating physician, unless there is good cause to do otherwise. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. §§ 404.1527(d); 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). The United States Court

of Appeals for the Eleventh Circuit has concluded "good cause" exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004). When the ALJ disregards the opinion of a treating physician, the reasons for doing so must be clearly articulated. *Id.*

Here, one treating physician, Dr. Arca completed a Medical Verification form, where the physician assessed Plaintiff's depression and chronic back pain to be permanent (Tr. 496). According to this medical practitioner, Plaintiff could only work one to ten hours per week at a sit down job (Tr. 496). Additionally in Dr. Arca's opinion, Plaintiff could participate in activities for one to ten hours per week due to her depression and neck pain (Tr. 496). Dr. Arca also determined Plaintiff would be inhibited from a lack of concentration and could only perform "limited activity" due to pain when participating in activities (Tr. 496).

In his decision, the ALJ cited to Dr. Arca's opinion in determining that Plaintiff could work with restrictions, including a sit down job (Tr. 22). The ALJ also acknowledged that in Dr. Arca's medical opinion, Plaintiff may have decreased concentration due to her depression (Tr. 22). However, after citing to this medical opinion the ALJ determined, "no treating or examining physician has said the claimant is completely unable to work on a permanent basis" (Tr. 25) and then assessed Plaintiff to have a RFC to perform light work with a sit/stand option (Tr. 23). The ALJ also found that Plaintiff "should avoid frequent squatting, kneeling, and climbing and she may minimally use her legs to push and pull" (Tr. 23). The ALJ appears to have ignored Dr. Arca's stated limitation that Plaintiff could not

work more than ten to twenty hours per week (Tr. 496). In fashioning this RFC, the ALJ did not state the weight accorded to Dr. Arca's opinion, although the ALJ referred to limited portions of Dr. Arca's opinion as previously stated.

Upon careful consideration, the Court finds the ALJ erred by failing to state with particularity the weight accorded to the opinion of Dr. Arca and the reasons therefor, and his failure to do so constitutes reversible error. *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Notably, the ALJ did not explicitly discount Dr. Arca's medical opinion which suggested limitations in excess of those found in the ALJ's RFC determination. In finding that Plaintiff was limited to light work with a sit/stand option, despite suffering from depression, it appears the ALJ selectively relied on certain aspects of Dr. Arca's medical opinion to conclude Plaintiff could perform such work. However, it is not enough to discover a piece of evidence which supports the decision to deny benefits, and then disregard other aspects of the same evidence which support a contrary conclusion. *McCruter*, 791 F.2d at 1548. The review must take into account the record as a whole. *Id.*

Second, the ALJ devotes nearly seven pages of his decision to a discussion of Plaintiff's alleged failure to comply with "prescribed treatment" of smoking cessation. This tangential discussion has little, if any, relevance to the case at hand. Plaintiff alleges no respiratory impairment. Plaintiff testified that one of her doctors advised her to stop smoking because it could be part of her depression (Tr. 528-29). Plaintiff agreed with the ALJ when he asked "[d]id he tell you that smoking can make your neck and back pain worse?" (Tr. 529). However, there is no mention of Plaintiff's smoking and its potential affects on her impairments in the medical records.

Failure to follow a prescribed treatment is only relevant if the prescribed treatment can restore the claimant's ability to work. 20 C.F.R. §§ 404.1530(a); 416.930(a); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). In this case it is at least questionable whether the physician's advice to stop smoking amounts to "prescribed treatment." Substantial evidence does not support the finding that Plaintiff failed to comply with prescribed medical treatment by continuing to smoke.[17]

## CONCLUSION

For the reasons stated herein, the decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. 405(g). The case is remanded for additional proceedings consistent with this Order and Opinion. The medical evidence must be correctly weighed in accordance with the Regulations and prevailing case law, and Plaintiff's residual functional capacity must be reassessed. On remand, the ALJ may reopen the record and accept any additional evidence deemed appropriate.

## DIRECTIONS AS TO JUDGMENT

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file. The judgment shall state that if Plaintiff were to

---

[17] It appears to the undersigned that the ALJ retained Dr. Arthur Lorber as a medical expert to testify at the supplemental administrative hearing primarily for the purpose of questioning Dr. Lorber as to the claimant's alleged non-compliance with medical treatment by failing to quit smoking (see Tr. 534-37). Dr. Lorber testified Plaintiff's smoking would not effect her medical conditions "whatsoever" (Tr. 536). Dr. Lorber elaborated that he had seen nothing in the record to suggest Plaintiff was claiming a pathology associated with her lungs, nor had she been treated for any lung problem (Tr. 536). When the ALJ persisted to assert there were medical studies that show smoking prevents healing of back injuries (Tr. 536), the ME testified he was aware of those claims and found they were of "marginal significance at best." (Tr. 536-37.)

ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits.  *See Bergen v. Commissioner of Social Security*, 454 F.3d 1273, 1278 (11th Cir. 2006); *compare* Fed. R. Civ. P. 54(d)(2)(B); M.D. Fla. Loc. R. 4.18(a).

**DONE AND ORDERED** at Jacksonville, Florida this 31st day of March, 2008.

Copies to all counsel of record

*[signature: Thomas E. Morris]*
**THOMAS E. MORRIS**
United States Magistrate Judge